DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant, Robert Kalmbach, appeals from the Lawrence County Common Pleas Court's decision to revoke his community control sanctions and impose a three-year prison sentence. Appellant contends the trial court erred in this decision because there was no substantial evidence to support it. However, because the record does contain substantial evidentiary support for its decision, the trial court did not abuse it's discretion. Accordingly, we overrule Appellant's assignment of error. *Page 2 
 I. Facts {¶ 2} In May of 2006, Appellant plead guilty in the Lawrence County Court of Common Pleas to a charge of domestic violence, a felony of the third degree. The court sentenced him to community control sanctions for four years, including a period of 73 days incarceration in the Lawrence County Jail. The terms of Appellant's control sanctions included, among others, that he 1) report, in person, to the Bureau of Community Corrections (hereinafter "BCC") on the 15th and 30th of each month; 2) immediately report to the BCC any change in residence or employment; 3) attend a designated alcohol rehabilitation program, and; 4) pay court costs. The court reserved the right to sentence Appellant to a three year prison term if he should violate the terms of his control sanctions.
 {¶ 3} Appellant reported, as required, to the BCC on the 15th and 30th of May, but thereafter failed to appear. He did not report to the BCC during the months of June, July, August and September. On June 21, Appellant did appear, as required, for an assessment at Family Guidance, for his mandated alcohol treatment program. However, Appellant failed to appear at his next scheduled appointment at Family Guidance and had no further contact with that agency. *Page 3 
 {¶ 4} Due to work considerations and other circumstances, Appellant stayed at various locations between the time he was put on community control sanctions in May and the time he was arrested in October. He was homeless during part of this period. He stayed with his brother, at a motel, briefly in an apartment, at the Salvation Army, at a mission and even outdoors. He also had at least three hospital stays during this period. On these occasions, he voluntarily entered the hospital because of feelings of depression. After the hospital stays, Appellant claims he attended a treatment program, Pathways, for alcohol counseling. Appellant was also jailed in Kentucky, from late June until mid July, for an old warrant.
 {¶ 5} On August 2, the BCC sent a certified letter, to the address given by Appellant as his residence, stating that he needed to report. The letter returned marked "No Such Person at this Address" and "Left No Forwarding Address." In September of 2006, a written order was issued for Appellant's arrest and he was placed in custody on October 6. A motion to revoke his community control sanctions was filed October 17 alleging three violations of his sanctions: (1) failure to report on the 15th and 30th of each month; (2) failure to follow rules of the program to get alcohol treatment; and (3) failure to pay costs. Following a hearing in November, the trial court *Page 4 
revoked Appellant's control sanctions and sentenced him to three years in prison. On December 12, 2006, Appellant filed the current appeal.
 II. Assignment of Error {¶ 6} 1. THE TRIAL COURT'S FINDING THAT DEFENDANT-APPELLANT HAD VIOLATED THE TERMS OF HIS COMMUNITY CONTROL SANCTIONS WAS WITHOUT SUBSTANTIAL EVIDENTIARY SUPPORT
 III. Legal Analysis {¶ 7} In his sole assignment of error, Appellant contends the trial court did not establish, with the necessary substantial evidentiary support, that he violated the terms of his community control sanctions. To support this assertion, Appellant argues that 1) he was unable to report to the BCC as mandated due to circumstances beyond his control; 2) he did seek alcohol treatment, though not through the Family Guidance program, and; 3) he did not fail to pay costs because payment had not been demanded, the time limit for paying costs had not expired, and the costs were not even calculated until after the motion to revoke sanctions was filed.
 {¶ 8} Probation is a privilege and the probationer must comply with the conditions of probation. " * * *[A]ny violation of those conditions may properly be used to revoke the privilege." State v. Ohly,166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675, at ¶ 19, quoting State v.Bell (1990), 66 Ohio App.3d 52, 57, 583 N.E.2d 414. "Because a community control *Page 5 
revocation hearing is not a criminal trial, the State does not have to establish a violation with proof beyond a reasonable doubt. (Internal citations omitted). Instead, the prosecution must present `substantial' proof that a defendant violated the terms of her community control sanctions." State v. Wolfson, 4th Dist. No. 03CA25, 2004-Ohio-2750, at ¶ 7. This substantial proof requirement is highly deferential to the trial court's decision and is similar to a preponderance of the evidence burden of proof. State v. Wells, 4th Dist. No. 06CA30, 2007-Ohio-906, at ¶ 8. Accordingly, if there is competent, credible evidence to sustain the decision, the trial court's conclusion must be sustained. Id. In these decisions, it is for the trier fact to determine witness credibility. Ohly at ¶ 19.
 {¶ 9} An appellate court should not reverse a trial court's decision to revoke community control sanctions absent an abuse of discretion.Wolfson, at ¶ 8. An abuse of discretion connotes more than an error in law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. See, e.g., State v. Bethel,110 Ohio St.3d 416, 2006-Ohio-4853, 854 NE.2d 150, at ¶ 95.
 {¶ 10} In the case sub judice, Appellant does not dispute that after May 30 he failed to appear in person at the BCC as required by his control sanction conditions. Rather, he contends that he made efforts to do so, but *Page 6 
circumstances beyond his control kept him from reporting. Appellant states he was often homeless and without means of support and transportation. He says it was impossible for him to report because of his hospitalizations and incarceration. Further, he claims members of his family, who attempted to contact the BCC on his behalf, were not told he had to appear in person. Though Appellant's circumstances were undoubtedly trying, there is substantial proof showing his failure to report was willful and voluntary.
 {¶ 11} Carl Bowen, Chief Probation Officer for Lawrence County Common Pleas testified that, according to his records, after May 30, the only contact with his office, made on Appellant's behalf, was a phone call from his mother on June 27. Though BCC has no record of it, Appellant's mother claims she called other times in May and June and left voice mail messages concerning her son's whereabouts. Appellant states he also called the BCC several times in early June and left voice messages. However, there is no evidence that any attempts were made to contact the BCC after June, and Appellant's own testimony demonstrates that his failure to report was his own choice.
 {¶ 12} During the revocation hearing, his own counsel asked him if he willfully violated any of the control sanction terms. Appellant responded: "In the beginning, after the 30th [of May], it was just circumstances, like *Page 7 
transportation, communication. It escalated with the jail stay and things that I just felt like it was out of control and I was scared todeal with them" (Emphasis added). Later, during cross-examination, the following exchange took place:
 Q. And you said at some point, I think you were talking in your August part of your narrative that you were on probation and you said you didn't come over [to the BCC] because you thought you'd go to jail.
 A. I did. . .
 Q. Why did you think you would go to jail if you came over to see Carl [Bowen] in August?
 A. Because I wasn't really sure if my Mom had contacted Carl when I was in jail. I wasn't really sure what the situation was. There was so many problems in my life at that point and time, all I could do was worry about it and not do anything about it.
 Q. Why did you think you would go to jail.
 A. For not reporting.
 Q. Because you knew you were supposed to report.
 A. Yes, Sir. That's when I was in jail I . . .
 Q. Mr. Kalmbach, and you didn't report, did you?
 A. No, Sir, I didn't. I'm not trying to, I made mistakes.
 {¶ 13} There is no question that Appellant faced hardships during the time period in question, but he also willfully failed to report to the BCC as required. There may have been one or two times, as when he was incarcerated, that it was impossible for Appellant to appear in person. *Page 8 
However, following May 30, though he knew it was mandatory, he never went to the BCC office again. Furthermore, after June, there is no evidence that he even attempted to contact the BCC.
 {¶ 14} Appellant claims his mental state, as evidenced by his hospital stays, also played a role in preventing him from reporting. In a similar case, we held that such claims do not excuse a probationary from complying with community control sanctions. "[The appellant] asserted at the hearing that she suffered from various mental disorders and defense counsel questioned certain witnesses about their awareness of these disorders. However, [the appellant] did not produce any medical testimony to establish that her alleged mental disorders caused her to violate the terms of her community control." Wolfson at ¶ 29. See, also,State v. Schlecht, 2nd Dist. No. 2003-CA-3, 2003-Ohio-5336 (holding the trial court did not err in failing to consider defendant's mental health problems as mitigation where defendant failed to produce evidence documenting the extent of his mental problems, did not claim he was insane, and did not seek a competency evaluation).
 {¶ 15} Appellant also contends he complied with the condition which required him to enroll in alcohol treatment. Though he did appear for his initial assessment at the Family Guidance Center, he failed to return. He was aware this treatment was a condition of his control sanctions, but he failed to *Page 9 
appear for his follow up appointment and he failed to inform either the BCC or Family Guidance that he would not appear.
 {¶ 16} Appellant states that, during this period, he did attend another program, Pathways, that provided alcohol treatment. He testified that on May 30, the last day of his contact with BCC, he asked an unidentified woman who worked at the BCC if he " * * * could transfer my counseling up toward Greenup because they have a Pathways up in Greenup. She said that she thought it would be all right." Chief Probation Officer Jim Bowen testified that he never gave permission for Appellant to change his treatment from Family Guidance to Pathways. Even if an employee of the BCC told Appellant it might be possible to replace the Family Guidance program with Pathways, Appellant took no further action to gain the approval of, or even notify, his control sanctions officer. Further, the record contains no evidence showing Appellant's activities or attendance at the Pathways program.
 {¶ 17} In revoking his control sanctions, the trial court also cited Appellant's failure to report his change of residence as mandated in his control sanction terms. Though he lived in multiple locations during this approximately five month period, sometimes for purposes of employment, there is no evidence Appellant ever notified the BCC. The BCC did receive a call from Appellant's mother in June stating that he would be incarcerated for *Page 10 
two weeks, but there is no evidence Appellant kept the BCC apprised of his frequent moves. As the trial court stated: "He didn't say, `I'm homeless.' `I'm living at a motel,' `I'm living at the Salvation Army,' etc., just no contact."
 {¶ 18} Finally, Appellant contends there was no substantial evidence that he failed to pay court costs as required by his control sanctions. Because he presented evidence that payment was never demanded, that the time-frame for payment had not expired and that the amount of his costs were not even calculated until after the motion to revoke was filed, we agree. Though it is not completely clear from the record whether or not the trial court found he had violated this condition, such a finding would not be necessary to revoke Appellant's community control sanctions.
 {¶ 19} We have held that even when a finding of failure to pay court costs is in error, a decision to revoke community control sanctions will be upheld when there are other bases for revocation. In Wolf son, we noted the trial court's decision to revoked the appellant's community control sanctions were based on far more than just a failure to pay court costs. "Because the trial court properly revoked [the appellant's] community control on these other violations, any error in terminating her community control sanction for failure to repay court costs is harmless." Wolfson at ¶ 21. In the case at bar, *Page 11 
the trial court based its decision to revoke Appellant's community control sanctions for his failure to appearing twice a month as mandated, for not properly attending alcohol rehabilitation and for his failure to give notification of changes of address. As such, even if the trial court determined that Appellant violated the condition to pay court costs, such finding was harmless.
 IV. Conclusion {¶ 20} The prosecution presented substantial proof that Appellant violated conditions of his community control sanctions. Any violation of those conditions may properly be used to revoke the privilege. Because there was competent, credible evidence supporting the trial court's decision to revoke the sanctions and impose a three-year prison term, no abuse of discretion occurred below. Accordingly, we overrule Appellant's sole assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, J. and Kline, J.: Concur in Judgment and Opinion. *Page 1